**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-1087C

(Filed: November 8, 2017)

**FILED**
**NOV - 8 2017**
**U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ************************************************<br><br>JOHN F. SHARPE,<br><br>             Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>             Defendant.<br><br>************************************************ | Military Pay Act, 37 U.S.C. §§ 204, 305a, 403; 10 U.S.C. § 1552; Motion for Summary Judgment; Judgment on the Administrative Record; Judicial Review of BCNR Decision and Implementation; Vessel Exception to UCMJ Article 15; Judicial Estoppel; Basic Allowance for Housing; Entitlement to Career Sea Pay and Career Sea Pay Premium. |

*John F. Sharpe*, Glenelg, Maryland, *pro se* Plaintiff.

*Igor Helman*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Lt. Maryam Austin*, Of Counsel, Office of the Judge Advocate General, General Litigation Division (Code 14), U.S. Department of the Navy, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

*Pro se* Plaintiff John F. Sharpe seeks review of the U.S. Navy's decision to deny him certain categories of back pay associated with corrections to his military record. Mr. Sharpe was separated from the Navy on September 30, 2009 after receiving a non-judicial punishment. In September 2015, Mr. Sharpe argued before the Board for Correction of Naval Records ("BCNR" or "the Board") that his non-judicial punishment was unlawfully imposed and that he should be treated as if he was never discharged from the Navy and has continued to serve on active duty without interruption. In February 2016, the BCNR took favorable action on Mr. Sharpe's application, voiding his non-judicial punishment and correcting his military record to reflect his continued service in the Navy without

interruption. In light of his corrected record, Mr. Sharpe is entitled to appropriate back pay and allowances covering the eight-year period of his unlawful separation.

Mr. Sharpe now disputes certain aspects of the Navy's calculation of his back pay. In his motion for summary judgment, Mr. Sharpe argues that he is entitled to the basic allowance for housing ("BAH") rate for San Diego, California and to career sea pay ("CSP") and a CSP premium. In its cross-motion for judgment on the administrative record, the Government argues that Mr. Sharpe should be judicially estopped from making inconsistent arguments before the BCNR and this Court, and, alternatively, that the Navy properly awarded him the BAH rate for Norfolk, Virginia and properly denied him CSP and the CSP premium.[1] For the reasons explained below, the Court GRANTS the Government's cross-motion for judgment on the administrative record and DENIES Mr. Sharpe's motion for summary judgment.

## Background[2]

### A. Mr. Sharpe's Naval Service

Mr. Sharpe graduated from the U.S. Naval Academy in 1993 and was certified as a Submarine Officer and Nuclear Engineer Officer shortly thereafter. AR 29, 153. Mr. Sharpe transferred into the Public Affairs Officer ("PAO") community in November 1999 and accepted a permanent appointment to Lieutenant Commander on December 1, 1999. Id. at 29. In June 2004, Mr. Sharpe was assigned to the office of the Navy Chief of Information ("CHINFO") in the Pentagon, taking a role as the Director for Plans and Policy. Id.

During his assignment to CHINFO in 2004 and 2005, Mr. Sharpe co-edited a two-volume anthology of articles critical of the Iraq War. Id. The anthology was published in April 2005. Id. Mr. Sharpe did not author any of the articles himself and his name appeared only once on an interior page, where he was listed as a co-editor under the name "J. Forrest Sharpe." Id. While Mr. Sharpe took no part in writing the articles, he and his co-editors did co-author 71 summaries describing the contents of the articles, which appeared just prior to the article they introduced. Id. at 30. One of these summaries was charged as showing contempt toward then-President George W. Bush. Id.

On October 31, 2005, the United States Fleet Forces Inspector General received a "hotline complaint" over Mr. Sharpe's alleged "improper participation in the anti-war

---

[1] The parties also disagree over the proper procedural vehicle for resolving this case. Mr. Sharpe argues that summary judgment is proper, while the Government contends that judgment on the administrative record is proper.

[2] As the Court explains below, judgment on the administrative record is the appropriate procedural vehicle for resolving this case. Accordingly, the facts in this decision are taken from the administrative record ("AR").

2

movement," prompting the Navy Inspector General to conduct a preliminary inquiry into the matter. Id. On November 21, 2005, the Inspector General reported his results to CHINFO in a memo stating, for the most part, that Mr. Sharpe was "exercising his free speech rights under the Constitution," and that his personal writings and speaking "predated the war in Iraq." Id. Regarding the anti-war anthology, the memo stated that some of the language contained in the second volume's dedication could be problematic under Article 88 of the Uniform Code of Military Justice ("UCMJ"), but that the anthology was written "in a very academic and reasoned way." Id. The Inspector General chose not to recommend or take any further action on the matter, other than to refer the memo to CHINFO. Id. at 31. In response to the memo, Mr. Sharpe's Reporting Senior at CHINFO issued a non-punitive letter of caution urging Mr. Sharpe to "exercise greater care in the performance of [his] duties in order to measure up to the high standards of CHINFO and the Navy Public Affairs community" in the future. Id.

On June 20, 2006, Mr. Sharpe checked in aboard the USS Carl Vinson ("Carl Vinson"), a nuclear-powered aircraft carrier, as a PAO. Id. at 33, 170–71. At the time of Mr. Sharpe's assignment to the Carl Vinson, the ship was non-operational and uninhabitable because it was undergoing a refueling and complex overhaul ("RCOH"). Id. at 33, 170. The RCOH was set to last during the entire pendency of Mr. Sharpe's assignment to the Carl Vinson. Id. at 42. As such, Mr. Sharpe was instructed to report to the Media Department, which was located ashore on the eighth floor of the "Bank Building" attached to the Northrop Grumman Newport News complex in downtown Newport News, Virginia. Id. at 33–34. Mr. Sharpe regularly reported to this onshore location throughout the entirety of his assignment to the Carl Vinson and carried out the majority of his duties at this location, except for reporting to a few other onshore locations in Hampton Roads, Virginia. Id. at 168, 248. Mr. Sharpe's duties while onshore at the Bank Building included conducting "routine business" and providing "personal and staffed public-affairs coordination and photography support" for various on-shore command events. Id. at 169. At no time during his assignment did Mr. Sharpe perform any regular duties on board the Carl Vinson; nor did he eat, work, live, stand watch or serve any punishment aboard the Carl Vinson or any other ship. Id. at 248. On April 1, 2010, the Carl Vinson's home port officially changed from Norfolk, Virginia to San Diego, California. Id. at 3.

B. Non-Judicial Punishment

On March 6, 2007, a Media Relations Officer ("MRO") from the office of the U.S. Fleet Forces PAO received a query from a reporter affiliated with a small publication in the Newport News area regarding an allegation, in a nongovernmental report, that Mr. Sharpe was involved in "hate group activity." Id. at 34. The MRO prepared an email to the immediate superior in command of the Carl Vinson summarizing the query, and on March 7, 2007, the Executive Officer of the Carl Vinson ordered Mr. Sharpe to turn over his duties to his deputy and report to his home in Carrollton, Virginia as his assigned place

3

of duty "until further notice." Id. Mr. Sharpe was relieved of all watch and command duties and began a temporary assignment to the Commander, Naval Air Forces Atlantic ("CNAL") in Norfolk, Virginia. Id. at 34–35.

On March 9, 2007, the Naval Criminal Investigations Service ("NCIS") began a formal investigation into the reporter's query. Id. at 35. Approximately two months later, in May 2007, Mr. Sharpe was informed that the Commanding Officer ("CO") of the Carl Vinson intended to impose a non-judicial punishment on him. Id. On May 16, 2007, the CO issued Mr. Sharpe a punitive letter of reprimand for two alleged violations of UCMJ Article 88. Id. at 35. Article 88 states, in relevant part:

> Any commission officer who uses contemptuous words against the President, the Vice President, Congress, the Secretary of Defense, the Secretary of a military department, the Secretary of Homeland Security, or the Governor or legislature of any State, Commonwealth, or possession in which he is on duty or present shall be punished as a court-martial may direct.

10 U.S.C. § 888; AR 35. These violations pertained to the two-volume anthology of articles co-edited by Mr. Sharpe critical of the Iraq War. AR 35. When Mr. Sharpe inquired about the process for demanding a trial by court-martial, the CO informed Mr. Sharpe that he had no right to make such a demand due to his assignment to the Carl Vinson. Id. at 35. The CO thereby invoked Article 15 of the UCMJ, the "vessel exception," which denies the right of a service member "attached to or embarked on a vessel" to refuse a non-judicial punishment and demand a trial by court-martial. 10 U.S.C. § 815(a).[3] On July 9, 2009, after the Commander, Navy Personnel Command ("CNPC") made a series of reports and recommendations to the Assistant Secretary of the Navy ("ASN") related to Mr. Sharpe's non-judicial punishment, the ASN approved the CNPC's recommendation that Mr. Sharpe be discharged from the Navy. AR 39; see also id. at 35–38. On September 30, 2009, Mr. Sharpe formally separated from the Navy. Id. at 39.

C. Administrative and Judicial Proceedings

1. Applications to the Board for Correction of Naval Records

On September 28, 2012, Mr. Sharpe submitted his first application to the BCNR, challenging his non-judicial punishment and subsequent separation from the Navy. Id. at

---

[3] Article 15 of the UCMJ states, "except in the case of a member attached to or embarked in a vessel, punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment." 10 U.S.C. § 815(a).

4

122, 1704. This initial application was misdirected by the Board to the Navy Personnel Command ("the NPC") instead of the Code 20 Criminal Law Division, prompting the Board to allow Mr. Sharpe to submit a supplemented application on September 28, 2015, which accounted for subsequently discovered information. Id. at 121–52.

In his supplemented application to the Board, Mr. Sharpe primarily argued that the Article 15 "vessel exception" did not apply to him because he was not "attached to or embarked in a vessel within the meaning of Art[icle] 15" and thus, was unjustly deprived of his right to demand a trial by court-martial before the imposition of his non-judicial punishment in 2007. Id. at 129, 187, 247–48. In making his case to the Board, Mr. Sharpe put forth two main, overarching arguments: first, that the Carl Vinson was not a vessel within the meaning of UCMJ Article 15 because it had completed only nineteen months of a 43-month drydock refueling overhaul, did not go out to sea, and thus, was effectively inoperable at the time he received his non-judicial punishment;[4] and second, that despite his technical assignment to the vessel, his actual permanent duty station ("PDS") was ashore in various locations away from the ship and thus, his PDS also was not a vessel within the meaning of Article 15. Id. at 187–88; 1708. Relying heavily on the analysis performed by the Court of Appeals for the Armed Forces in United States v. Edwards, 46 M.J. 41 (C.A.A.F. 1997), Mr. Sharpe stressed that the Board should give little weight to the "on-paper" technicality of his "assignment" to the ship and instead focus on the realities of his relationship to the ship and the ship's operational status. AR 132.

Mr. Sharpe further argued, among other things, that he was likewise ashore in Norfolk, Virginia while he was assigned to CNAL after being ordered home, and did not engage in any activities on the sea before the implementation of his non-judicial punishment and formal separation from the Navy in September 2009. Id. at 188. Mr. Sharpe also contended that the "nexus" between himself and the Carl Vinson was not in line with the legislative intent behind the phrase "attached to or embarked in a vessel" in Article 15, because he did not live, perform duties, or stand watch aboard the ship; his regular place of duty was an on-shore office building in downtown Newport News, Virginia; and he was not required to check in with the ship after being ordered back home and subsequently assigned to CNAL in Norfolk, Virginia. Id.

Lastly, in addition to requesting his reinstatement to active duty and correction of his naval record, Mr. Sharpe requested that he be paid all "regular or special pay, allowances, allotments, compensation, emoluments or other pecuniary benefits" due to him as a result of his alleged erroneous separation from the Navy. Id. at 1759–61.

---

[4] Mr. Sharpe also noted that the crew (1) did not begin returning aboard the Carl Vinson until fifteen months after the imposition of his non-judicial punishment; (2) did not complete the process of moving aboard the ship until over 21 months later; and (3) did not actually go out to sea on the ship until 25 months after the imposition of the non-judicial punishment. See AR 129.

5

### 2. Initial Proceedings Before This Court

In conjunction with his revised application to the BCNR, Mr. Sharpe filed suit in this Court on September 29, 2015 "to preserve his right to judicial review" of the Board's final action. Compl. at 8. In his complaint, Mr. Sharpe asserts the same arguments he submitted to the Board challenging his non-judicial punishment and requests the same relief. See id. at 51–97. On November 24, 2015, Mr. Sharpe and the Government filed a joint motion to stay the case while the BCNR reviewed Mr. Sharpe's application for relief. Dkt. No. 6. This Court granted the parties' motion on December 1, 2015 and stayed the case pending a final determination by the Board with respect to Mr. Sharpe's application. Dkt. No. 7.

### 3. The BCNR's Decision

On February 8, 2016, the BCNR took favorable action on Mr. Sharpe's application and recommended to the Secretary of the Navy that Mr. Sharpe be granted appropriate relief. AR 42–46. In its decision, the Board agreed with Mr. Sharpe that he was not attached to a vessel within the meaning of UCMJ Article 15 and was unfairly deprived of his right to demand a trial by court-martial. Id. In so doing, the Board pointed to the following considerations and justifications: (1) Mr. Sharpe was ordered away from the ship before the imposition of his non-judicial punishment; (2) Mr. Sharpe was assigned to on-shore duties after being ordered home; (3) the Carl Vinson was completely non-operational during the entirety of Mr. Sharpe's assignment to the ship; and (4) neither Mr. Sharpe's regular place of work nor his non-judicial punishment hearing took place aboard the ship. Id. at 42. The Board also noted that in making its decision, it looked beyond the technicality of Mr. Sharpe's "on-paper assignment" to the ship and instead focused on the "totality of th[e] case's factual circumstances" in concluding that Mr. Sharpe fell outside the vessel exception, as Mr. Sharpe had urged the Board to do in his application. Id.

Based on this conclusion, the Board recommended that Mr. Sharpe's non-judicial punishment and its resulting consequences be set aside and ordered that his record be corrected to remove any references to the punishment and its consequences. Id. at 42–44. The Board further recommended that Mr. Sharpe be treated as if he "was not discharged from the Naval Service, but has continued to serve on active duty without interruption." Id. at 45. The Board's recommendation did not specify how Mr. Sharpe's back pay and appropriate compensation should be calculated.

On April 25, 2016, the Assistant Secretary of the Navy approved the Board's recommendations. Id. at 46. Mr. Sharpe received orders to report to active duty no later than February 13, 2017, and to report to his ultimate duty station in Washington, D.C. by May 2017. Id. at 18–23. Additionally, the Assistant Secretary issued an amended order on December 21, 2016 putting into effect Mr. Sharpe's appropriate promotions, id. at 24,

and Mr. Sharpe endorsed his permanent appointment letter on May 5, 2017, promoting him to the rank of "Commander" effective August 1, 2008. Id. at 5.

### 4. Current Proceedings Before This Court

After the BCNR issued its recommendations to the Assistant Secretary of the Navy, the parties provided this Court with a series of joint status reports keeping the Court appraised of the Navy's final approval and implementation of the Board's recommendations, including the calculation of Mr. Sharpe's back pay. See Dkt. Nos. 8, 10, 14, 20, 26, 28, 32. On May 5, 2017, the Court ordered the Government to submit its final position on the amount of back pay to which Mr. Sharpe is entitled on or before May 12, 2017, and to pay Mr. Sharpe the undisputed amount "as soon as practicable." Dkt. No. 33. The Court also ordered Mr. Sharpe to file a status report responding to the Government's final calculations on or before May 19, 2017. Dkt. No. 33.

On May 12, 2017, the Government filed its status report detailing what it believed to be the proper amount of back pay owed to Mr. Sharpe. Dkt. No. 34. In its status report, the Government indicated that the NPC issued a memorandum to Defense Finance and Accounting Services ("DFAS"), the entity responsible for calculating military back pay, recommending DFAS take certain actions with respect to Mr. Sharpe's back pay. Dkt. No. 34, at 1–3; see also AR 2–4. While Mr. Sharpe and the Government agree with most of the Navy's recommendations regarding Mr. Sharpe's back pay calculations—a sum totaling \$666,471.49[5]—the parties remain in disagreement over Mr. Sharpe's proper BAH rate, whether Mr. Sharpe is entitled to CSP, and, relatedly, whether Mr. Sharpe is entitled to the CSP premium. The Government and Navy opine that Mr. Sharpe is entitled to the BAH rate for Norfolk, Virginia covering the period from October 1, 2009 to February 13, 2017, and that Mr. Sharpe is not entitled to CPS or the CPS premium for that same period. See Dkt. No. 34, at 2. Mr. Sharpe takes a different view, outlined below.

In response to the Government's status report, Mr. Sharpe submitted together as a single filing a status report, motion for leave to file portions thereof as plaintiff's second amended complaint, and motion for summary judgment, which this Court filed by its leave as a motion for summary judgment. See Dkt. No. 36. In Mr. Sharpe's motion for summary judgment, he argues, among other things, that he is entitled to the BAH rate for San Diego, California beginning April 1, 2010, when the Carl Vinson's home port changed from Norfolk, Virginia to San Diego, California. Pl.'s Mot. at 44–77. Mr. Sharpe also argues that he is entitled to CSP and the CSP premium for the period covering October 1, 2009 to February 12, 2017. Id. at 78–89. Finally, Mr. Sharpe argues that summary judgment is the appropriate vehicle for resolving the issues in this case. Id. at 13–16.

On July 19, 2017, the Government filed a cross-motion for judgment on the administrative record, arguing (1) that judgment on the administrative record is the proper

---

[5] This amount has already been paid to Mr. Sharpe. See Dkt. No. 39, at Ex. 1.

7

procedural vehicle for resolving this case; (2) that Mr. Sharpe should be judicially estopped from making inconsistent arguments before the BCNR and this Court; and (3) that Mr. Sharpe is entitled only to the amounts DFAS calculated pursuant to the Navy's recommendations, as reflected in the Government's status report. See Dkt. No. 43. The parties finished briefing these issues on September 6, 2017, and the Court heard oral argument on the parties' motions on October 25, 2017.

## Discussion

This case presents unique and novel factual circumstances that give rise to complex issues. While the parties dispute procedural mechanisms and certain aspects of Mr. Sharpe's back pay, they do not challenge this Court's jurisdiction to hear these issues or to resolve this case. The Court agrees that it has jurisdiction to hear this case and derives its subject matter jurisdiction from both the Tucker Act, 28 U.S.C. § 1491, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 703. The Tucker Act grants jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The APA in turn entitles a person legally wronged by agency action to seek judicial review, thus waiving sovereign immunity of the United States. 5 U.S.C. § 703; Weaver v. United States, 46 Fed. Cl. 69, 76 (2000).

Additionally, a Plaintiff must establish an independent right to money damages from a money-mandating source within a contract, regulation, statute or constitutional provision in order for the case to proceed. Jan's Helicopter Serv. Inc. v. FAA, 525 F.3d 1299, 1306 (Fed. Cir. 2008); Volk v. United States, 111 Fed. Cl. 313, 323 (2013). Here, the separate money-mandating sources are 37 U.S.C. §§ 204, 305a, and 403, which govern the portions of Mr. Sharpe's pay that are currently in dispute. Thus, in conjunction with the APA, this Court has jurisdiction pursuant to the Tucker Act to review the Navy's decision regarding the proper calculation of Mr. Sharpe's back pay.

As the Court notes above, in accordance with the correction of Mr. Sharpe's naval record, the parties have agreed on most of the Navy's calculations of Mr. Sharpe's back pay. The following three issues remain in dispute: (1) whether this case should be decided on summary judgment or judgment on the administrative record; (2) whether Mr. Sharpe is judicially estopped from making inconsistent arguments before the BCNR and this Court; and (3) whether the Navy's decision to pay Mr. Sharpe the BAH rate for Norfolk, Virginia and deny him CSP and the CSP premium was arbitrary, capricious, or contrary to law. The Court will resolve each of these issues in turn.

### A. Judgment on the Administrative Record Is the Proper Procedural Vehicle for Resolving This Case.

The parties first dispute whether summary judgment or judgment on the administrative record is the appropriate procedural vehicle for resolving this case. In his motion for summary judgment, Mr. Sharpe argues that summary judgment is appropriate because there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law because he is merely seeking to enforce the BCNR's decision. Pl.'s Mot. at 13–16. In its cross-motion for judgment on the administrative record and reply to Mr. Sharpe's subsequent response, the Government contends that judgment on the administrative record is appropriate because (1) this is a military pay case, and such cases are reviewed on the administrative record like all other agency action; and (2) agency action here consists of both the BCNR's decision and the Navy's implementation of that decision, which includes the calculation of Mr. Sharpe's back pay. Def.'s Mot. at 13; Def's Rep. at 1–4. Mr. Sharpe disputes this latter point in his response to the Government's cross-motion, noting that only the BCNR's decision to correct his record constitutes "agency action," and that the Board's decision here is not in dispute. See Pl.'s Resp. at 7–9.[6]

Military pay cases involving decisions of a military correction board and a service member's subsequent entitlement to appropriate monetary compensation under the U.S. Code are reviewed on the administrative record under the same standard as any other agency action. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006); Martinez v. United States, 333 F.3d 1295, 1314–15 (Fed. Cir. 2003). "Agency action" is not limited to a correction board's decisions; rather, agency action also includes the implementation of that decision and any recommended relief. See Laningham v. United States, 30 Fed. Cl. 296, 304 (1994) ("[F]inal and binding decisions made by the General Counsel and [Assistant Secretary], in furtherance of processing plaintiff's claims based upon a resolution of the BCNR, are also given the same weight as resolutions of the BCNR. Together, they compromise the 'administrative decision' of the defendant . . . .").

Here, Mr. Sharpe defines the relevant agency as solely the BCNR and the relevant agency action as solely the BCNR's favorable decision to void his non-judicial punishment and correct his record. However, Mr. Sharpe adopts far too narrow a definition of "agency action." The proper agency here is the Navy as a whole, and the proper agency action includes both the BCNR decision *and* the implementation of that decision by DFAS, under the direction and recommendations of the NPC. The fact that the BCNR did not have the Navy's recommendations regarding Mr. Sharpe's back pay and DFAS' final calculations

---

[6] In response to the Government's cross-motion for judgment on the administrative record, Dkt. No. 43, Mr. Sharpe filed two appendices: "Appendix A" and "Appendix B." See Dkt. Nos. 46, 47. "Appendix A" is Mr. Sharpe's response to the Government's cross-motion for judgment on the administrative record, while "Appendix B" is Mr. Sharpe's reply to the Government's opposition of his motion for summary judgment. As such, the Court cites to "Appendix A" as "Pl.'s Resp. at __" and to "Appendix B" as "Pl.'s Rep. at __."

9

before it while contemplating its decision on Mr. Sharpe's application does not mean that those recommendations and calculations are not agency action subject to this Court's review on the administrative record. To the contrary, the BCNR decision, the NPC's back pay recommendations, and DFAS' calculations together constitute agency action currently under review by this Court. See id. at 304. As such, the Court finds that judgment on the administrative record is the appropriate procedural vehicle for resolving this case and will review the Navy's decision under the same standard as any other agency action.

### B. Mr. Sharpe Is Judicially Estopped from Making Inconsistent Arguments Before the BCNR and This Court.

Before addressing the reasonableness of the Navy's decision to deny Mr. Sharpe certain aspects of what he believes to be his proper back pay, the Court first finds that Mr. Sharpe is judicially estopped from making inconsistent arguments before the BCNR and this Court. In order for a court to invoke the doctrine of judicial estoppel, this Court has noted that the following three elements must be satisfied:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, [a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 556 (2005) (citing New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001)); see also Moreland Corp. v. United States, 76 Fed. Cl. 268, 294 (2007). Here, all three elements of the judicial estoppel doctrine are plainly satisfied.

### 1. Mr. Sharpe's Arguments Before the BCNR and This Court Are Inconsistent.

The parties here primarily disagree over whether Mr. Sharpe made inconsistent arguments before the BCNR and this Court. The disputed "inconsistency" relates to how Mr. Sharpe argued that his case did not fall within the Article 15 "vessel exception," which denies the right of a service member to demand a trial by court-martial if they are "attached to or embarked in a vessel within the meaning of Art[icle] 15," 10 U.S.C. § 815(a), and how Mr. Sharpe argues before this Court that he is entitled to certain categories of back pay based on his formal "assignment" to the Carl Vinson.

10

The Government asserts that Mr. Sharpe argued before the BCNR that the vessel exception did not apply because he was not actually "attached to or embarked in" the Carl Vinson, since he was stationed onshore in an office building and the Carl Vinson itself was non-operational during his entire assignment to the ship. Def.'s Mot. at 17. The Government also argues that Mr. Sharpe stressed to the Board that it give little weight to his "on-paper assignment" to the ship and instead focus on where he was physically located to determine whether he was "attached to or embarked in" the Carl Vinson for purposes of the vessel exception. Def.'s Rep. at 5. Now, the Government argues, Mr. Sharpe is contradicting himself by urging this Court to focus on the formality of his "on-paper assignment" to the Carl Vinson, as reflected by his corrected record, in order to grant him CSP, the CSP premium, and the BAH rate for San Diego after the ship changed home ports. Def.'s Mot. at 17; Def.'s Rep. at 5.

In his briefings and arguments before the Court, Mr. Sharpe frames his argument before the BCNR in a different way. Mr. Sharpe first asserts that his argument before the Board focused on the fact that there was no "operational inconvenience" to giving him a trial by court-martial since he was on land and never at sea, and then argues that his current argument before this Court focuses on the fact that he is entitled to the BAH rate for San Diego, CSP, and a CSP premium by way of his corrected record stating that he was continuously "assigned" to the Carl Vinson from June 20, 2006 to February 12, 2017. Pl.'s Resp. at 2, 16; see also AR 129. Mr. Sharpe further argues that the Government falsely equates the terms "assignment" and "attachment," that each of these terms mean separate and distinct things, and that he has maintained the same position with respect to whether he was "assigned" or "attached" to the Carl Vinson before both the BCNR and this Court. See Pl.'s Resp. at 16–18.

While at first glance these arguments, as framed by Mr. Sharpe to the Court, appear to be distinct enough to defeat any notion of inconsistency, the administrative record—which this Court relies upon in making its decision—tells a wholly different story. Mr. Sharpe's argument before the BCNR goes far beyond stating that there were no impediments to conducting a trial by court-martial since he was not physically serving on the Carl Vinson. To the contrary, the crux of Mr. Sharpe's argument before the BCNR lies in his explicit urging of the Board to ignore the technicality of his "on-paper assignment" to the ship and to instead focus on the realities of his physical relationship to the ship and the ship's operational status to determine that he did not fall within the vessel exception. Mr. Sharpe's application to the BCNR states as much:

> To be sure, no one disputes that the MCM *says* that 'a person is "attached to" or "embarked in" a vessel if . . . [he] is assigned or attached to the vessel.' What *is* disputed—and what the courts and the Board have clarified—is what 'attached to or embarked in a vessel' *means*, and the relevant authorities, which Code 20 fails to cite, have made clear that, contrary to

11

> the facial language of the MCM, the Art[icle] 15 [vessel exception] is to be applied *not* on the sole basis of an on-paper assignment to a ship, but on the basis of facts that establish both the nature of a member's relationship to a ship, and the operational-readiness status of the ship itself.

AR 132 (emphasis in original) (footnote omitted); see also id. at 129, 168. Now, before this Court, Mr. Sharpe starkly changes his tune. He now argues that this Court cannot ignore and must instead give full weight to the technicality of his formal assignment to the Carl Vinson, and that this "on-paper assignment" entitles him to the BAH rate for San Diego, CSP, and the CSP premium. Pl.'s Resp. at 1–2. Simply put, Mr. Sharpe urged the BCNR to ignore his technical "assignment" to the ship in order to nullify his non-judicial punishment and correct his record but now urges this Court to give full weight to that very same technical "assignment" in determining his back pay. These arguments are plainly inconsistent. It is clear that Mr. Sharpe's interests have changed,[7] so he has changed his position accordingly. Mr. Sharpe's attempt to draw distinctions between the meanings of the terms "assignment" and "attachment" does nothing to change this analysis. Mr. Sharpe simply cannot urge the BCNR to ignore a technicality and then ask this Court to give full weight to that same technicality after his interests have changed. See Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996). Thus, Mr. Sharpe's arguments are inconsistent and the Court finds that the first element of the judicial estoppel doctrine is satisfied.

### 2. Mr. Sharpe Persuaded the BCNR to Accept His Earlier Position.

The second element of the judicial estoppel doctrine looks to see if the party asserting inconsistent positions was successful in persuading a court or any other tribunal of its first position, such that the acceptance of the second position by a subsequent court or tribunal would "create the perception that either the first or second court [or tribunal] was misled." New Hampshire, 532 U.S. at 750. This element is also met. After hearing and reviewing Mr. Sharpe's application, the BCNR agreed with Mr. Sharpe's position that he was not attached to or embarked in the Carl Vinson for purposes of the vessel exception. AR 42. In so doing, the Board specifically accepted Mr. Sharpe's argument that it ignore his literal "on-paper assignment" and instead look to the realities of his relationship to the ship and the ship's operational status:

> And in light if the DDC's remark, in the case referred to by Code 20 in enclosure (4), that vessel-exception cases 'have generally . . . looked not to literal definitions but to multiple factors that affect the propriety of allowing or denying the right to refuse mast,' the Board feels that the totality of this case's

---

[7] Mr. Sharpe's interest before the BCNR was to nullify his non-judicial punishment and correct his record, while his interest before this Court is to obtain monetary relief related to his back pay.

>factual circumstances make it appropriate to apply the Edwards factors as a matter of equity.

Id. It is clear that Mr. Sharpe persuaded the Board to ignore his technical and literal "assignment" to the ship; therefore, to persuade this Court that such a literal "assignment" should now be given full weight would certainly create the perception that either this Court or the BCNR was misled. As such, the Court finds that the second element of the judicial estoppel doctrine is also satisfied.

### 3. Absent Judicial Estoppel, Mr. Sharpe Would Derive an Unfair Advantage.

The last element of the judicial estoppel doctrine considers whether the party asserting inconsistent positions would stand to derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See New Hampshire, 532 U.S. at 751. Here, Mr. Sharpe stands to derive an unfair advantage if he is not estopped: he will avoid non-judicial punishment by arguing that his "on-paper assignment" to the Carl Vinson was practically meaningless since he was sufficiently removed from the ship to fall outside the vessel exception, while gaining improper back pay allotments by arguing that this "on-paper assignment" conclusively entitles him to such pay. While Mr. Sharpe plays semantic games in an attempt to undercut this conclusion, he is, in reality, doing nothing more than "playing fast and loose with the courts." See U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 596 (Fed. Cir. 1995). As such, the Court finds that the third element of the judicial estoppel doctrine is satisfied and thus, Mr. Sharpe is judicially estopped from taking inconsistent positions before the BCNR and this Court.

### C. Alternatively, the Navy's Decision to Award Mr. Sharpe the BAH Rate for Norfolk, Virginia and Deny him CSP and the CSP Premium Was Not Arbitrary or Capricious, or Contrary to Law.

In the alternative, having determined that judgment on the administrative record is the proper procedural vehicle for resolving this case, the Court also finds that the Navy's decision to award Mr. Sharpe the BAH rate for Norfolk, Virginia and to deny him CSP and the CSP premium was not arbitrary or capricious, or contrary to law.

Rule 52.1 of this Court governs motions for judgment on the administrative record. A review of this kind is like a paper trial based upon the documents assembled by the agency. The Court makes factual findings based upon the evidence presented in this record. See, e.g., Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005); Coastal Envtl. Grp., Inc. v. United States, 118 Fed. Cl. 1, 10 (2014). To review a motion under Rule 52.1, this Court must decide whether a party has met its burden of proof based on the evidence in the record given all disputed and undisputed facts. Anderson v. United States, 111 Fed. Cl. 572, 578 (2013), aff'd (Fed. Cir. 13-5117, July 11, 2014); Bannum, Inc., 404 F.3d at 1356.

In reviewing agency actions related to decisions of military correction boards, this Court must apply the standard of review set forth in the APA, 5 U.S.C. § 706. Under section 706(2)(A), this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." Id. § 706(2)(A). The Court shall overturn an agency's decision only if it determines that the decision was "arbitrary and capricious, unsupported by substantial evidence, or not in accordance with the applicable laws or regulations." Laningham, 30 Fed. Cl. at 310. Accordingly, as long as the agency's decision was reasonable and based upon substantial evidence, this Court will not disturb the result. Wronke v. Marsh, 787 F.2d 1569 (Fed. Cir. 1986); Van Cleave v. United States, 70 Fed. Cl. 674, 678–79 (2006).

Mr. Sharpe has the burden of proving that the Navy's decision regarding his proper BAH rate and its denial of his CSP and CSP premium was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006). In his motion for summary judgment and subsequent filings before the Court, Mr. Sharpe first argues that the APA standard described above does not apply to this case, and then argues that he is entitled to the BAH rate for San Diego, CSP, and the CSP premium by way of his corrected record only, and without any further exercise of discretion from the NPC. See Pl.'s Mot. at 13–16, 65–87; Pl.'s Resp. at 22–24. In its cross-motion for judgment on the administrative record, the Government counters that the Navy properly awarded Mr. Sharpe the BAH rate for Norfolk, Virginia—the Carl Vinson's home port at the time of Mr. Sharpe's unlawful separation—and also properly denied Mr. Sharpe CSP and the CSP premium, because both require that Mr. Sharpe physically be "at sea," which he was not. See Def.'s Mot. at 19–24. For the reasons discussed below, the Court finds that the Navy's decision was reasonable and that Mr. Sharpe has failed to meet his burden in proving otherwise.

> 1. <u>The Navy Properly Determined that Mr. Sharpe Was Entitled to the BAH Rate for Norfolk, Virginia, Not San Diego, California.</u>

BAH is a variable, basic housing allowance awarded to service members eligible for basic pay in order to address higher costs of living in certain geographic areas. See 37 U.S.C. § 403(a)(1); see also Pl.'s Mot. at 65–66. It is undisputed that Mr. Sharpe is entitled to BAH, since he is also entitled to basic pay. Mr. Sharpe argues that he is entitled to the BAH rate of wherever the Carl Vinson's home port was during the length of his assignment to the ship, which lasted from June 20, 2006 to February 12, 2017, as reflected by his corrected record. See Pl.'s Mot. at 65–69, 72. Following this logic, Mr. Sharpe claims that he is entitled to the BAH rate for San Diego from April 1, 2010 to February 12, 2017, after the Carl Vinson's home port changed from Norfolk to San Diego on April 1, 2010. See id. at 65–77. Mr. Sharpe further argues that the NPC had no discretion or authority to recommend to DFAS that his BAH rate be kept at the lower Norfolk rate, even though Mr.

14

Sharpe did not physically relocate with the ship to San Diego and instead remained at his home in Virginia throughout his separation. Id. at 59–65.

As both parties note and the Court agrees, the factual circumstances in this case are unlike any this Court has dealt with in the past. However, the Court sees no logical reason why Mr. Sharpe should be paid the higher BAH rate for San Diego when he at no time set foot in San Diego nor sought housing in San Diego. While Mr. Sharpe urges the Court to give full weight to his "on-paper assignment" to the Carl Vinson and accept the fiction that he traveled with the ship from Norfolk to San Diego—and remained in San Diego for the past seven years—the Court will instead take the tack Mr. Sharpe successfully advanced before the BCNR: to look to factors beyond his literal "on-paper assignment" to the ship. Those factors show that Mr. Sharpe never moved with the ship to San Diego and never sought housing in San Diego between April 1, 2010 and February 12, 2017.

Even if Mr. Sharpe had not been erroneously separated from the Navy to begin with, he still offers no evidence to prove that he would have remained assigned to the Carl Vinson until February 12, 2017. In fact, on his own admission, Mr. Sharpe's rotation with the Carl Vinson was set to expire in June 2008 and most PAO officer tour lengths only last between 24 to 36 months. Id. at 33, 43. Thus, to award him the higher BAH rate for San Diego for seven years would not only be illogical, but would also confer a substantial windfall on Mr. Sharpe and defeat the very purpose behind the regulations governing BAH: to aid service members in obtaining housing in the vicinity of their permanent duty station and to help with corresponding cost-of-living expenses. See OPNAVINST 7220.12 CH-1 ¶ 3; see also Def.'s Rep. at 9. The Court therefore finds that the Navy's decision to place Mr. Sharpe in the same position he was in before his improper separation by paying him the BAH rate for Norfolk—which he was receiving at the time of his unlawful separation—was not arbitrary or capricious, or contrary to law; rather, it was quite reasonable. See generally Holley v. United States, 33 Fed. Cl. 454 (1995); Ulmet v. United States, 17 Cl. Ct. 679 (1989), aff'd 935 F.2d 280 (Fed. Cir. 1991).

    2. The Navy's Decision to Deny Mr. Sharpe CSP and the CSP Premium Was Likewise Reasonable.

CSP is an allowance for service members entitled to basic pay who are "assigned to" and "serving on" a ship. See 37 U.S.C. § 305a; see also Pl.'s Mot. at 79–80. A CSP premium is paid to those members who serve on sea duty for over 36 consecutive months. See 37 U.S.C. § 305a(c). Mr. Sharpe argues that he is entitled to CSP and the CSP premium because his corrected record reflects his continuous assignment to the ship through February 2017, and whether he actually served on the ship through this time does not control whether he is entitled to such special pay. See Pl.'s Mot. at 25–26.

Like before, Mr. Sharpe looks to derive a windfall from a technicality he told the BCNR to ignore yet implores this Court to give full weight. The heart of Mr. Sharpe's

15

argument here is that because his corrected record reflects his continuous assignment to the Carl Vinson, the Court must determine that he served on the ship from October 1, 2009 to February 12, 2017 and is therefore entitled to CSP and the CSP premium. See id. at 79–89. Again, the Court finds it illogical to award Mr. Sharpe CSP and the CSP premium when he never actually went to sea or performed any sea duties. The Court finds the Government's analogy to Boruski v. United States, 155 F. Supp. 320 (Ct. Cl. 1957), particularly persuasive. See Def.'s Mot. at 21. In Boruski, a five-judge panel of this Court's predecessor held that a service member was not entitled to "flight pay" because the member "did not participate in any aerial flight," which was imperative for entitlement to that pay. See Boruski, 155 F. Supp. at 324. The Court sees no reason not to extend this principle to sea pay for purposes of CSP and the CSP premium. Further, to award Mr. Sharpe CSP and the CSP premium would again defeat the purposes behind the regulations governing such pay: to recognize "the greater than normal rigors of sea duty, the arduous duty involved in long deployments and the repetitive nature of assignment to such duty." OPNAVINST 7220.14 ¶ 3; see also Def.'s Rep. at 9. Mr. Sharpe did not experience these rigors; thus, it was reasonable for the Navy to deny him this specialized pay.[8]

Additionally, Mr. Sharpe's reliance on Carlisle v. United States, 66 Fed. Cl. 627 (2005), for the proposition that entitlement to special duty pay is not controlled by whether a service member actually performed special duty is misplaced. See id. at 637; Pl's Resp. at 26. In Carlisle, this Court held that whether a member of the Army was entitled to continue receiving "special duty assignment pay" was a decision for either the Secretary of the Army or the Army Board for the Correction of Military Records to make. Carlisle, 66 Fed. Cl. at 639. In so holding, the Court relied on the Federal Circuit's decision in Groves v. United States, 47 F.3d 1140 (Fed. Cir. 1995). In Groves, the Federal Circuit determined that Mr. Groves, a member of the Army, was erroneously denied "special pay by virtue of [a later overturned] court-martial conviction and sentence." Id. at 1144. In its decision, the Federal Circuit noted:

> [i]t is inarguable that the special pay at issue here is awarded at the discretion of the Secretary of the Army, and that no court is qualified to review the substantive merits of a decision to deny it, so long as the decision comports with any procedural standards mandated by statute or regulation.

---

[8] The Court recognizes that Mr. Sharpe was receiving CSP before his unlawful separation, despite the fact that he was neither serving on the ship nor out to sea. While the Court questions whether this payment was proper to begin with, that issue is not before the Court and thus, the Court will not disturb this pre-separation payment.

16

Id. (citations omitted). The Federal Circuit then noted that the Secretary of the Army could have lawfully exercised its discretion to discontinue Mr. Groves' special pay,[9] but that no such discretion was exercised; rather, Mr. Groves was denied his special pay by some other means. Id. The Court in Carlisle faced the same factual scenario:

> As in Groves . . . this court is not called upon to review whether the Secretary of the Amy correctly terminated plaintiff's [special duty assignment pay]. Rather, the issue is whether defendant has failed to comply with the first Board's recommendation . . . that plaintiff should receive 'restoration of all rights and privileges, including all back pay and allowances.'

Carlisle, 66 Fed. Cl. at 637. The factual scenarios described above are not currently present in the case before this Court; rather, this Court *is* being called upon to review the decision of the Navy—through the NPC and DFAS—to deny Mr. Sharpe CSP and the CSP premium. As the Court explains above, the Navy's decision was reasonable and the Court will not disturb the Navy's lawful exercise of discretion denying Mr. Sharpe these categories of specialized sea pay.

### D. A Remand to the BCNR or Any Other Applicable Subdivision of the Navy Is Not Necessary.

Finally, the Court notes that there are no gaps in the administrative record that would preclude it from reaching its conclusions or entering judgment in this case. Accordingly, the Court finds that a remand to the BCNR or any other applicable subdivision of the Navy is not necessary.

### Conclusion

In sum, for the foregoing reasons, the Court finds that (1) judgment on the administrative record is the proper procedural vehicle for resolving this case; (2) Mr. Sharpe is judicially estopped from making inconsistent arguments before the BCNR and this Court; and (3) the Navy's decision to award Mr. Sharpe the BAH rate for Norfolk, Virginia and to deny him CSP and the CSP premium was not arbitrary or capricious, or contrary to law. Mr. Sharpe has received the appropriate amount of back pay in light of his corrected record and is entitled to nothing further. The Court therefore GRANTS the Government's cross-motion for judgment on the administrative record and DENIES Mr.

---

[9] The Federal Circuit's holding here also cuts against Mr. Sharpe's argument that the NPC, by way of the "Bourne Memorandum," had no discretion to make recommendations to DFAS concerning the calculation of Mr. Sharpe's back pay and allowances. See Pl.'s Mot. at 46–51.

17

Sharpe's motion for summary judgment. The Clerk shall enter judgment in favor of the Government. No Costs.

IT IS SO ORDERED.

                                                                    /s/ Thomas C. Wheeler
                                                                    THOMAS C. WHEELER
                                                                    Judge